**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SHAWNEE HOLDING, INC.,<br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>THE SMALL BUSINESS<br>ADMINISTRATION, and<br>KELLY LOEFFLER,<br>IN HER OFFICIAL CAPACITY AS<br>ADMINISTRATOR OF THE UNITED STATES<br>SMALL BUSINESS ADMINISTRATION,<br>Defendants. | Civil Action No. |

**COMPLAINT**

Plaintiff Shawnee Holding, Inc., d/b/a Shawnee Inn and Golf Resort ("Shawnee") alleges as follows against Defendants the United States of America, the Small Business Administration, and Kelly Loeffler, in her official capacity as Administrator of the Small Business Administration:

## I. NATURE OF THE ACTION

1. In March 2021, Congress created the Restaurant Revitalization Fund ("RRF") through Section 5003 of the American Rescue Plan Act ("ARPA") and directed the Small Business Administration ("SBA") to deliver emergency relief to food-and-beverage businesses (expressly including inns) that the COVID-19 pandemic had pushed to the brink. Shawnee, a

family-owned historic inn whose food-and-beverage revenue collapsed during the pandemic, is precisely the kind of business Congress intended the RRF to save.

2. Shawnee applied honestly as an inn, the SBA reviewed its application and awarded it $1,449,865.13, and Shawnee spent every dollar on purposes the program permits. Years later, without coherent explanation, the SBA reversed course-rebranding Shawnee an ineligible "hotel" and demanding repayment of the entire award.

3. Shawnee qualified for the program. The SBA's own application form listed "Inn" as an eligible business category, requiring only that onsite food-and-beverage sales comprise at least 33% of gross receipts. Shawnee's documented figure was 41.8%, well within the requirement. Tellingly, the SBA has never disputed that figure or alleged that Shawnee misused a single dollar of the award.

4. Shawnee seeks review of that final agency action under the Administrative Procedure Act.

5. Shawnee also seeks a declaration that the repayment demand is invalid, unenforceable, and without a lawful basis for adverse federal-debt reporting or credit disqualification arising from the challenged determination.

6. The consequences are not hypothetical. When severe storms struck Shawnee's community in July 2026 (triggering a federal disaster declaration for Monroe County, where Shawnee is located), the SBA invoked the very RRF debt Shawnee disputes to deny Shawnee's application for storm disaster relief, compounding the harm from its unlawful determination.

## II. PARTIES

7. Plaintiff Shawnee Holding, Inc. d/b/a Shawnee Inn and Golf Resort is a Pennsylvania corporation with its principal place of business at 100 Shawnee Inn Drive, Shawnee on Delaware, Pennsylvania.

8. Defendant United States of America is named pursuant to 5 U.S.C. § 702.

9. Defendant Small Business Administration ("SBA") is an agency of the United States Government responsible for administering the RRF program.

10. Defendant Kelly Loeffler is the Administrator of the SBA and, under Section 5003 of ARPA, is responsible for administering the RRF. She is sued in her official capacity only.

## III. JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law, including Section 5003 of ARPA and the Administrative Procedure Act, 5 U.S.C. §§ 701-706. Shawnee seeks relief other than money damages, and sovereign immunity is waived under 5 U.S.C. § 702.

12. This Court may also grant declaratory and further relief under 28 U.S.C. §§ 2201 and 2202.

13. Venue is proper in this District under 28 U.S.C. § 1391(e)(1)(C) because Shawnee maintains its principal place of business in Shawnee on Delaware, Monroe County, Pennsylvania, within this District, and this action does not involve real property.

## IV. FACTUAL BACKGROUND

14. Shawnee owns and operates the historic "Shawnee Inn and Golf Resort" in the Pocono Mountains, which opened in 1911 and has been family-owned since 1977. It has long held itself out as an inn, offering lodging, golf, food-and-beverage service, and related year-round resort activities.

15. The property's food-and-beverage operations are supported by several kitchens: the main kitchen (serving the River Room, banquets, and coffee service); the Shawnee Craft Brewery and Taproom kitchen; and the golf-course halfway-house kitchen.

16. Food and beverage were a substantial part of Shawnee's business before the COVID-19 pandemic. In 2019, Shawnee's food-and-beverage operations generated approximately $3.20 million, representing 41.8% of its gross receipts. In 2020, that revenue fell to approximately $1.61 million, a decline of approximately $1.59 million, or 49.6%.

### A. The RRF Application and Award

17. On or about May 3, 2021, Shawnee applied to the Restaurant Revitalization Fund program (the "Application"). In the Application, Shawnee identified its business as an "inn" and certified its eligibility under the rules then in effect.

18. SBA Form 3172 expressly listed "Inn" as an eligible business category and stated that an inn qualified if onsite food-and-beverage sales comprised at least 33% of gross receipts. Shawnee's documented percentage was 41.8%.

2. Which of the following best describes the Applicant's business? Check all that apply.

- ☐ Restaurant
- ☐ Food stand, food truck, food cart
- ☐ Caterer
- ☐ Bar, saloon, lounge, tavern
- ☐ Brewpub, tasting room, taproom (Eligibility requires onsite sales to the public comprising at least 33% of gross receipts)
- ☒ Inn (Eligibility requires onsite sales of food and beverage to the public comprising at least 33% of gross receipts)
- ☐ Licensed facility or premise of a beverage alcohol producer where the public may taste, sample, or purchase products
- ☐ Other similar place of business in which the public or patrons assemble for the primary purpose of being served food or drink
- ☐ Snack and Nonalcoholic Beverage Bar
- ☐ Bakery (Eligibility requires onsite sales to the public comprising at least 33% of gross receipts)
- ☐ Brewery and/or microbrewery (Eligibility requires onsite sales to the public comprising at least 33% of gross receipts)
- ☐ Winery (Eligibility requires onsite sales to the public comprising at least 33% of gross receipts)
- ☐ Distillery (Eligibility requires onsite sales to the public comprising at least 33% of gross receipts)

19. The Application reported 2019 gross receipts of $7,648,150.03 and 2020 gross receipts of $5,033,584.90. After subtracting $1,164,700 in Paycheck Protection Program ("PPP") proceeds, Shawnee requested an award of $1,449,865.13.

20. After reviewing Shawnee's application and supporting documents, the SBA granted the award in full.

21. On or about June 24, 2024, Shawnee submitted its Restaurant Revitalization Fund Program Post Award Report, which accounted for the entire award and certified compliance.

22. Shawnee reported, among other approved uses, $765,783.13 in food-and-beverage expenses, $281,276 in outdoor-seating construction, $112,775 in utilities, and $205,210 in other business expenses.

23. Having submitted its post-award report accounting for the full award and certifying compliance, Shawnee reasonably understood that it had satisfied its obligations and that no further action was required under the RRF program.

## B. THE SBA REPAYMENT DEMAND

24. On or about April 23, 2026, nearly three years after approving the award and long after Shawnee had spent every dollar on permitted purposes, the SBA abruptly reversed course and sent Shawnee a letter demanding return of the entire award (the "Demand Letter"). A true and correct copy of the April 23 letter is attached as Exhibit A.

25. In the Demand Letter, the SBA incorrectly implied that Shawnee was a hotel or motel rather than a qualifying inn. Specifically, the SBA asserted that: (i) under the RRF program guidelines, hotels and motels are not eligible entities; (ii) a restaurant within a hotel or motel must have a separate Tax Identification Number; and (iii) hotels and motels are not considered "Inns" for purposes of the RRF program.

26. The SBA built a sweeping conclusion on a single fact. Shawnee's food-and-beverage and lodging activities are operations of one business, not separate entities, and they share one EIN precisely because they are one business. Yet the SBA treated them as two "entities" and, because they share that EIN, determined that "the entities could not be separated

for eligibility consideration." On that basis, the SBA concluded that Shawnee was not an eligible entity and had to repay the award.

27. That reasoning silently discarded the "inn" classification under which the SBA had already approved and funded the award, even though nothing about the underlying facts had changed.

**SMALL BUSINESS**
**ADMINISTRATION**
**WASHINGTON, DC 20416**

| | |
|---|---|
| **Date:** | 04/23/2026 |
| **Subject:** | Return of Funds |
| **Awardee Business Name:** | Shawnee Holding, Inc. |
| **Confirmation ID:** | a23a00112686 |
| **SBA Loan Number:** | 5228899005 |
| **Award Amount:** | $1,449,865.13 |
| **Amount to be Returned to SBA:** | $1,449,865.13 |

Dear Restaurant Revitalization Fund Award Recipient:

Thank you for submitting your Restaurant Revitalization Fund (RRF) Post Award Report. SBA has reviewed your Report and all supporting documentation provided and has determined that there is an issue with your Award that requires a return of funds.

Ineligible Business Type - Under RRF program guidelines, Hotels/Motels are not eligible entities. A restaurant within a hotel/motel must have a separate Tax Identification Number. (Hotels and motels are not considered "Inns" for the purpose of the RRF program). Because the restaurant and hotel share the same EIN, the entities cannot be separated for eligibility consideration. Therefore, the business does not meet the definition of an eligible entity under the Restaurant Revitalization Fund Program. As a result, funds awarded must be returned.

28. Notably, the SBA has never alleged that Shawnee misused the funds, failed to account for them, or spent them outside the permitted categories. Nor has it questioned Shawnee's documented 41.8% food-and-beverage figure. The SBA's demand rests solely on its

belated re-labeling of Shawnee from the "inn" that it originally approved to an ineligible "hotel," despite no change in the underlying facts.

29. Compounding the pressure, the Demand Letter set out escalating interest rates and penalties that would accrue if Shawnee did not surrender the full award, forcing Shawnee to choose between repaying funds it lawfully received and spent, or facing a mounting federal debt.

### C. The Dispute and Final Determination

30. Shawnee timely requested reconsideration on or about May 21, 2026, explaining that it had applied as an inn and that its food-and-beverage receipts exceeded the required threshold. A true and correct copy of the May 21 email to the SBA is attached as Exhibit B.

31. On or about May 29, 2026, the SBA responded that "Hotels are not eligible for RRF Awards" and that "Restaurants within a hotel are eligible if they file taxes separately and have their own EIN." The SBA quoted a provision in the RRF Program Guide concerning a restaurant that operates independently inside another business and reproduced portions of informal frequently asked questions concerning hotels and the 33% threshold. A true and correct copy of the May 29 email from the SBA is attached as Exhibit C.

32. The SBA's response does not coherently apply to Shawnee. It does not explain why the SBA now alleges that Shawnee is a hotel or motel rather than an inn. It does not address the statutory inclusion of inns or the inn-specific 33% standard. It does not discuss Shawnee's documented 41.8% food-and-beverage receipts.

33. On August 5, 2026, Shawnee, through counsel, formally disputed the repayment demand, requested a collection hold, and asked SBA to reconsider its determination or identify the legal and factual basis for its position and confirm whether further administrative review remained available. A true and correct copy of the August 5 letter is attached as Exhibit D.

34. On August 14, 2026, SBA reaffirmed its determination and stated that it could not reconsider the award further. A true and correct copy of the August 14 notice is attached as Exhibit E.

> Thank you for your e-mail. As previously determined, the SBA stands by their original determination and cannot reconsider this award further.
>
> Page 4 RRF Program Guide
>
> Eligible entities include any of the above entities located in an airport terminal or that operate independently (i.e. has its own tax identification number) inside another business (e.g. a restaurant that operates independently inside a hotel or conference center) or that are a Tribally owned concern.
>
> This is an excerpt from the upfront program rules for RRF. It was clear that the restaurant had to have its own EIN and operate separately. Further, the applicant entity did not meet the requirement of a place of business in which the public or patrons assemble for the **primary** purpose of being served food or drink.
>
> SBA cannot reconsider its decision.
>
> Please note that the due process letter that was mailed affords you certain rights and options.

35. SBA again relied on the separate-EIN provision applicable to hotels, additionally asserting that Shawnee did not satisfy the requirement of a place of business where the public or patrons assemble for the primary purpose of being served food or drink.

36. SBA did not explain how its primary-purpose conclusion could be reconciled with the statutory inclusion of inns, the Program Guide's inn-specific 33% standard, or Shawnee's documented food-and-beverage operations and receipts. Nor did SBA identify the factual

analysis supporting its conclusion that Shawnee fell under the requirements applicable to hotels or that it failed that requirement.

37. ARPA defines an eligible entity to include an "inn." 15 U.S.C. § 9009c(a)(4)(A).

38. The statute does not exclude an inn because it offers lodging, operates a golf course, or describes itself as a resort, nor does it condition an inn's eligibility on separate entities, separate tax returns, or separate EINs.

39. The Restaurant Revitalization Fund Program Guide dated April 28, 2021 (the "Program Guide") implements the statutory "inn" category. A true and correct copy of the Program Guide is attached as Exhibit F.

40. It expressly lists inns among eligible entities and requires that, to be eligible, inns provide documentation that on-site sales of food and beverage to the public comprised at least 33% of gross receipts in 2019. Shawnee exceeded that threshold with documented food-and-beverage receipts of 41.8% of its 2019 gross receipts.

41. SBA is confused as to the nature of the Plaintiff's business. The separate-EIN provision on which the SBA relies addresses a different type of applicant, specifically an eligible entity operating independently inside another business, such as a restaurant operating independently inside a hotel or conference center. Shawnee applied in its own right as an inn. Therefore, the applicable question was whether its onsite food-and-beverage sales comprised at least 33% of gross receipts, which they did.

**D. THE SEPTEMBER 1, 2026, LOAN DENIAL AND RESULTING HARM**

42. Damage from the SBA's arbitrary action has just begun yet is already significant. For example, over the July 4, 2026, holiday weekend, severe storms struck the Shawnee on Delaware community, downing trees and cutting power to Shawnee and the surrounding community for approximately five days. The storms caused physical damage and substantial revenue loss to Shawnee.

43. On July 31, 2026, in response to a request from Governor Josh Shapiro received on July 29, 2026, the SBA issued an Economic Injury Disaster Loan declaration for the Commonwealth of Pennsylvania (Disaster Declaration No. 21740; Pennsylvania Disaster No. PA-20039), designating a July 4, 2026, incident period for severe storms and identifying Monroe County, where Shawnee is located, as a primary affected county. As a result, Shawnee became eligible to apply for SBA disaster relief based on its storm-related damage and revenue loss. A true and correct copy of the emergency disaster declarations is attached as Exhibit G.

44. Shawnee submitted its disaster relief loan application to the SBA on or about August 27, 2026.

45. On September 1, 2026, the SBA denied Shawnee's Disaster Business Loan Application No. 79994446540. A true and correct copy of the September 1 denial letter is attached as Exhibit H

46. The denial cited an "unsatisfactory payment history" and an "unresolved compliance issue" involving a prior SBA loan or grant of Shawnee or a related party, but did not identify the underlying obligation, related party, or source of the adverse information.

47. When Shawnee asked the SBA about the basis for the denial, an SBA representative stated that the application was denied because of the RRF matter, specifically, that Shawnee was regarded as owing repayment of the RRF award.

48. On information and belief, the denial relied at least in part on the challenged RRF determination. Consistent with this, the SBA's published fact sheet for the disaster declaration states that applicants who have not complied with the terms of previous SBA loans may not be eligible for disaster assistance. Shawnee has not been told whether the adverse information is maintained solely in the SBA's internal records or was also reported through the Credit Alert Verification Reporting System ("CAIVRS") or another governmental or credit-reporting system.

49. Together, the repayment demand and the loan denial present an ongoing controversy over Shawnee's asserted federal indebtedness and the use of that asserted debt for adverse reporting and federal-credit eligibility determinations.

50. The longer this situation remains unresolved, the more likely Shawnee will suffer further damage to its reputation, credit rating, and financial operations.

## V. CLAIMS FOR RELIEF

### COUNT I - VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT (5 U.S.C. § 706)

51. Shawnee re-alleges and incorporates by reference all prior paragraphs as though fully set forth herein.

52. The SBA reviewed Shawnee's application, approved it, disbursed the funds, and accepted Shawnee's post-award report accounting for every dollar. At no point has the SBA disputed that food-and-beverage sales comprised at least 33% of Shawnee's gross receipts, or that Shawnee spent the award entirely on permitted purposes.

53. Nearly three years later, the SBA reversed itself without any change in the underlying facts. Without explanation, it relabeled Shawnee an ineligible "hotel/motel" rather than the "inn" it had approved, yet it has never articulated any principled standard distinguishing the two.

54. The SBA's April 23, 2026 determination that Shawnee was ineligible and must repay the RRF award, reaffirmed by the SBA's August 14, 2026 refusal to reconsider, constitutes final agency action establishing the SBA's position that Shawnee must return the award..

55. The SBA's decision is particularly nonsensical, given that Shawnee was an eligible entity (an inn) that met every requirement set out in the SBA's Application, the RRF Program Guide, and other program materials.

56. Indeed, the SBA's determination rests on a novel and unsupported premise: that a single business providing both lodging and food-and-beverage service, deriving at least 33% of its revenue from food and beverage, cannot qualify as an inn unless it is split into two independent entities with separate EINs. Nothing in ARPA, the RRF Program Guide, or any regulation imposes that requirement, and it contradicts the plain terms of the program guidance, which lists inns as eligible entities and asks only whether onsite food-and-beverage sales met the 33% threshold.

57. The SBA's determination that Shawnee was ineligible for the RRF grant was arbitrary, capricious, an abuse of discretion, and not in accordance with applicable law.

58. The SBA never applied the governing inn-eligibility standard to Shawnee's circumstances, never explained why Shawnee should be classified as a "hotel" rather than an "inn," and never reconciled its separate-EIN and primary-purpose rationales with the statute's express inclusion of inns, the Program Guide's inn-specific 33% standard, and Shawnee's documented 41.8% food-and-beverage receipts. An agency action that disregards both the controlling standard and the record before it cannot survive judicial review. Here, SBA's repayment demand rests entirely on an unexplained, arbitrary, and flawed determination.

59. SBA has completed its reconsideration of the challenged RRF determination and expressly declined further reconsideration. That determination is a final agency action for which Shawnee has no other adequate remedy in a court.

60. Pursuant to 5 U.S.C. § 706, the SBA's agency action should be held unlawful and set aside.

**COUNT II – DECLARATORY RELIEF**

61. Shawnee re-alleges and incorporates by reference all prior paragraphs as though fully set forth herein.

62. More than three years after approving the Plaintiff's application, SBA now demands repayment of the entire $1,449,865.13 award and seeks to impose escalating interest

and penalties that mount with every month Shawnee declines to repay funds it lawfully received and spent. See Exhibit A

63. An actual, justiciable controversy exists between the parties on three related questions: (i) whether Shawnee was an eligible entity for the RRF award; (ii) whether SBA's repayment demand is valid and enforceable; and (iii) whether the challenged determination supplies any lawful basis to report or designate Shawnee as owing a delinquent or defaulted federal debt, or as disqualified from federal credit on that basis.

64. This controversy is neither hypothetical nor remote. The outstanding repayment demand has already produced concrete injury--including the September 1, 2026, denial of Shawnee's disaster-relief loan--and a judicial declaration will resolve the parties' dispute over the asserted repayment obligation and its downstream consequences for federal-debt reporting and credit eligibility.

65. Shawnee therefore requests a declaratory judgment that: (i) Shawnee was an eligible entity under the RRF program; (ii) SBA's April 23, 2026 repayment demand, as reaffirmed on August 14, 2026, is invalid, unlawful, and unenforceable; (iii) Shawnee owes no repayment obligation arising from the challenged determination; and (iv) the challenged determination and resulting repayment demand provide no lawful basis for Defendants to report or designate Shawnee, in CAIVRS or any other governmental or credit-reporting system, as owing a delinquent or defaulted federal debt or as disqualified from federal credit on that basis.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Shawnee Holding, Inc. respectfully requests that this Court:

(1) Hold unlawful and set aside under 5 U.S.C. § 706(2)(A) SBA's April 23, 2026 determination of ineligibility and repayment demand, as reaffirmed on August 14, 2026, as arbitrary, capricious, an abuse of discretion, and not in accordance with law;

(2) Enter a declaratory judgment against Defendants under 28 U.S.C. § 2201 that: (a) Shawnee was eligible for the RRF award; (b) the challenged repayment demand is invalid, unlawful, and unenforceable; and (c) Shawnee owes no repayment obligation arising from the challenged determination;

(3) Declare that the challenged determination and resulting repayment demand provide no lawful basis for Defendants to report or designate Shawnee, in CAIVRS or any other governmental or credit-reporting system, as owing a delinquent or defaulted federal debt or as disqualified from federal credit on that basis; and

(4) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Paul M. Midzak*

Paul M. Midzak
PA ID No. 310447
HARBORSTONE LAW LLP

*Attorneys for Plaintiff Shawnee Holding, Inc.*

Dated: September 30, 2026